**Raymond J. TORRES, Plaintiff,**

**v.**

**WISCONSIN DEPARTMENT OF HEALTH AND SOCIAL SERVICES, Taycheedah Correctional Institution, Nona J. Switala, Individually and in her Official Capacity, Certain Unnamed Defendant Employees of the Wisconsin Department of Health and Social Services, Individually and in Their Official Capacity, Defendants.**

**Nos. 83–C–627, 83–C–628 and 83–C–629.**

United States District Court,
E.D. Wisconsin.

Aug. 6, 1984.

Dale L. English, Colwin, Fortune, Colwin & Pomeroy, Fond du Lac, Wis., for plaintiff.

John Sweeney, Asst. Atty. Gen., Madison, Wis., for defendants.

## DECISION AND ORDER

WARREN, District Judge.

By its short *Order* of July 13, 1984, in this matter, the Court announced its decision to grant the defendants' motion to limit the scope of this action to matters cognizable under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, effectively dismissing the plaintiffs' second and third claims for relief under 42 U.S.C. §§ 1985 & 1986 and 42 U.S.C. § 1983, respectively.

With today's supplemental memorandum, the Court explains its decision of July 13, 1984.

## BACKGROUND

As the Court recounted in its *Decision and Order* of October 14, 1983, this action arises out of the adoption by the Wisconsin Department of Health and Social Services of a bona fide occupational qualification (BFOQ) plan under which certain posts at the Taycheedah Correctional Institution are staffed by women only. That plan, announced in mid-1980 and made effective on September 1, 1982, designated fifteen of eighteen Corrections Officer 3 posts at Taycheedah as BFOQ positions in an effort to ensure the privacy of female inmates incarcerated there.

Plaintiffs, all male employees of the Wisconsin Department of Health and Social Services at Taycheedah, have brought this action to challenge the validity of the BFOQ program under Title VII of Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Specifically, the plaintiffs allege that the creation and implementation of the plan was arbitrary and capricious; that it discriminates against males in general on the basis of sex; that it discriminates against males in general on the basis of sex; that it has had an adverse impact on plaintiffs in particular in that they have been demoted from Level 3 to Level 2 Corrections Officers; and that this change in their employment status has caused them to suffer financial loss, a diminution of employment opportunities, and injury to their personal and professional reputations. They also allege violations of 42 U.S.C. §§ 1985 and 1986, based on a conspiracy among the defendants to interfere with the plaintiffs' civil rights, and violations of 42 U.S.C. § 1983, based on the actions of defendant Nona J. Switala, superintendent at the Taycheedah Institution, in implementing the BFOQ plan.

By their complaints, filed in separate actions on May 11, 1984, and consolidated for purposes of discovery and trial by the Court's *Order* of August 9, 1984, the plaintiffs seek reinstatement to their former positions as Corrections Officers 3, compensation for the amount of overtime and retirement benefits lost as a result of their demotions, other compensatory and punitive damages totaling over $1 million, and attorneys' fees and costs.

In their answer of June 1, 1983, defendants deny any violations of federal law in connection with their implementation of the BFOQ program and allege seven affirmative defenses—among them, that the actions of the Department of Health and So-

cial Services were undertaken to ensure the privacy of female inmates at the Taycheedah facility and, as such, were reasonably required for the normal operation of the institution. By its *Decision and Order* of October 14, 1984, the Court concluded that none of the defendants' affirmative defenses is so insufficient that it must be stricken, as requested by the plaintiffs in their motion pursuant to Rule 12(f) of the Federal Rules of Civil Procedure.

On November 18, 1983, the defendants filed the present motion to limit the scope of this action to matters cognizable under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* As the plaintiffs have noted in their responsive brief, the motion, in effect, constitutes a request to eliminate the plaintiffs' second and third claims for relief and, as such, will be construed by the Court as a motion to dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

In their supporting memorandum, the defendants note, first, that the remedial provisions of 42 U.S.C. §§ 1985 & 1986, upon which the plaintiffs' second claim for relief is based, are properly invoked in tandem, since an action will not lie under section 1986 if it cannot be maintained under section 1985. Most importantly, however, the defendants argue that the plaintiffs' allegation of violations of section 1985(3) [1] may not be premised on conduct also violative of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* They contend, citing *Great American Federal Savings & Loan Association v. Novotny*, 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 987 (1979), that Title VII effectively displaces other causes of action—such as those under 42 U.S.C.

§§ 1985 & 1986—arguably available as methods of asserting substantive rights in the context of employment discrimination.

Similarly, the defendants attack the plaintiffs' second cause of action, premised on 42 U.S.C. § 1983, on the basis that it, too, is preempted by the exclusive remedial scheme of Title VII. While acknowledging that the United States Supreme Court has yet to speak as definitively on the viability of actions brought under both section 1983 and Title VII as it has with respect to overlapping section 1985 and Title VII claims, the defendants direct this Court's attention to authority for the proposition that the specific statutory scheme for remedying discrimination in federal employment preempts the more general remedial statutes enacted by the Congress. *Brown v. General Services Administration*, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976). Likewise, they note those cases in which other precisely-drawn, structurally complete laws such as Title VII have been held to preclude companion causes of action under section 1983. *Middlesex County Sewerage Authority v. National Sea Clammers Association*, 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981); *Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973).

In addition, the defendants argue that the very balance, completeness, and structural integrity of Title VII's remedial scheme make it unlikely that the Congress intended it to be viewed as but a supplement to existing statutory remedies. Rather, the law was enacted as the exclusive means of combatting discrimination in the employment setting, thus preempting

---

**1.** As the defendants observe in their supporting brief, the subsection of section 1985 applicable to the facts of this case is the third, which provides, in pertinent part, as follows:

> If two or more persons in any State or Territory conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or

Territory the equal protection of the laws; ... in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

claims premised on the same set of facts but anchored under one of the post-civil war statutes, or so the defendants contend.

In their thoroughly-researched and well-written responsive memorandum, the plaintiffs argue, first, that their cause of action under 42 U.S.C. §§ 1985 & 1986 should not be dismissed since it is not premised on a Title VII-type violation but on a deprivation of rights secured by the Fourteenth Amendment to the United States Constitution. Specifically, the plaintiffs maintain that

> ... Section 1985(3) can play a role in employment discrimination cases where the actions of the defendant violate the United States Constitution....
>
> [A]lthough the plaintiffs' third claim for relief alleging violations of both Sections 1985(3) and 1986 would not lie if based only on Title VII, said claim for relief will lie if based on a deprivation of a constitutional right or federal statute other than Title VII. Here the plaintiffs' third claim for relief under Sections 1985(3) and 1986 is based on rights granted by both Title VII and the Fourteenth Amendment, as can be seen by an examination of the wording of the third claim for relief. Said claim, therefore, must not be eliminated.

Plaintiffs' *Brief In Opposition To Motion To Limit Scope Of Action* at 6–7 (December 2, 1983).

The plaintiffs distinguish the decision of the United States Supreme Court in *Great American Federal Savings and Loan Association v. Novotny,* 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979), on the basis that the conspiracy alleged in that case was purely private, whereas the present charge is of unequal treatment by the State of Wisconsin, wholly within the sphere of activity proscribed by the Fourteenth Amendment. In this context, the plaintiffs suggest that while *Novotny* does preclude actions under section 1985 for deprivations of rights guaranteed by Title VII, it does not bar a section 1985 suit premised on conduct that violates both Title VII and the federal constitution. This,

they maintain, is precisely the sort of action they have brought against defendant Switala—that is, one that springs from her conspiracy with "other unnamed defendants ... to willfully, wantonly, maliciously, and intentionally deprive the plaintiffs of their constitutional rights on the basis of their sex by the creation and implementation of the BFOQ plan at the TCI, in violation of Sections 1985(3) and 1986." Plaintiffs' *Brief In Opposition To Motion To Limit Scope Of Action* at 7–8 (December 2, 1983).

In response to the defendants' position that the third count in the complaint, brought under 42 U.S.C. § 1983, should also be dismissed, the plaintiffs note factual differences between the present action and those cases cited by the defendants in support of their motion—among them, that *Brown v. General Services Administration,* 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976), turned on the exclusive nature of the remedies available to federal employees and that *Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), focused on the relationship between section 1983 and the applicable habeas corpus statute, 28 U.S.C. § 2254. The plaintiffs also point to the fact that they have fully complied with all of the administrative prerequisites to initiating a Title VII action and are thus not invoking the civil rights statutes as a means of avoiding the exhaustion requirement—something not true of the petitioning parties in many of the cases cited by the defendants.

In further support of their position, the plaintiffs argue that the intent of the Congress in passing Title VII of the Civil Rights Act of 1964 was to establish a remedy for employment discrimination that supplements, rather than supplants, pre-existing laws under which claims might arguably be stated. They direct the Court's attention in particular to the discussions of the legislative history found in *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975), *Alexander v. Gardner-Denver Company,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147

(1974), and *Nilsen v. City of Moss Point, Mississippi,* 701 F.2d 556 (5th Cir.1983), from which they deduce the congressional intent to allow individuals to pursue their rights under Title VII and any other applicable federal or state statutes.

The plaintiffs also observe that Judge John C. Shabaz of the Western District of Wisconsin, in an action similar to the present, concluded that compensatory and punitive damages are recoverable under 42 U.S.C. § 1983 where the sole basis of the claim is a violation of Title VII. *Huebschen v. Department of Health & Social Services,* 547 F.Supp. 1168 (W.D.Wis.1982), *reversed and remanded on other grounds,* 716 F.2d 1167 (7th Cir.1983). The plaintiffs invite this Court to follow the reasoning and conclusion in *Huebschen,* as well as that in a handful of other federal cases, by denying the defendants' motion to dismiss the present section 1983 claim.

Finally, the plaintiffs contend that even if this Court rejects the holding in *Huebschen* and concludes that a section 1983 suit cannot be premised on acts violative of Title VII, the second count in their complaint should not be dismissed since it springs from defendants' denial of the plaintiffs' Fourteenth Amendment right to equal protection of the laws. Citing *Woerner v. Brzeczek,* 519 F.Supp. 517 (N.D.Ill. 1981), *Hall v. Board of County Commissioners of Frederick County,* 509 F.Supp. 841 (D.Md.1981), and other cases as examples of circumstances under which plaintiffs are permitted to pursue constitutional claims apart from Title VII actions, the plaintiffs derive the following:

> ... Conduct which violates Title VII may also violate the Fourteenth Amendment, and a plaintiff should be allowed to recover under a Section 1983 action based upon the violation of his or her constitutional rights, notwithstanding the fact that said conduct may also violate Title VII. The plaintiffs should not be foreclosed from enforcing their constitutional rights in this matter merely because the defendants' unlawful conduct also violates Title VII.

Plaintiffs' *Brief In Opposition To Motion To Limit Scope Of Action* at 21 (December 2, 1983).

In reply, the defendants reaffirm their basic position—namely, that Title VII of the Civil Rights Act of 1964 provides the exclusive remedy for victims of sex discrimination—and state simply that the plaintiffs' attempts to distinguish *Novotny, Brown, Preiser,* and *Sea Clammers* are not sufficiently successful to justify disregarding the plain import of those cases. Moreover, the defendants dismiss the plaintiffs' "clean hands" argument as follows:

> ... [W]hether or not the plaintiffs have complied with the Title VII strict administrative scheme is not dispositive of whether or not Title VII was intended to preclude an action for sex discrimination under 42 U.S.C. § 1983. The simple fact that plaintiff might choose to ignore the requirements of Title VII by bringing a claim under § 1983, thereby demanding a jury, is not, in and of itself, dispositive of the exclusivity argument.

Defendants' *Reply Brief* at 2 (December 13, 1983).

As the Court's detailed explanation of the parties' various arguments in support of and in opposition to the present motion suggests, the issues now before it are complex and do not admit of simple resolution. While recognizing that the slate upon which it writes is not entirely clean, the Court feels comfortable in resolving this matter principally on the basis of its fundamental understanding of the remedial nature and scope of Title VII of the Civil Rights Act of 1964.

### THE NOVOTNY PRINCIPLE AND THE PLAINTIFFS' CAUSE OF ACTION UNDER §§ 1985 & 1986

As described above, the third count in the plaintiffs' complaint is based on an in tandem invocation of sections 1985(3) and 1986 of Title 42 of the United States Code. The parties are in agreement that if the plaintiffs are not permitted to proceed with their section 1985 claim, they can maintain no cause of action under section 1986 either, since that statute merely prescribes a remedy for misprison of a violation of sec-

tion 1985.[2] *Williams v. St. Joseph Hospital,* 629 F.2d 448, 452 (7th Cir.1980). As the plaintiffs have accurately observed, "[t]he issue, therefore, becomes whether or not the plaintiffs ... state a claim under Section 1985(3)." Plaintiffs' *Brief In Opposition To Motion To Limit Scope Of Action* at 5 (December 2, 1983).

In *Great American Federal Savings & Loan Association v. Novotny,* 442 U.S. 366, 378, 99 S.Ct. 2345, 2352, 60 L.Ed.2d 957 (1979), the United States Supreme Court explicitly found that "deprivation of a right created by Title VII cannot be the basis for a cause of action under § 1985(3)." In its discussion of the relationship between these two remedial provisions, the Court observed that

> [i]f a violation of Title VII could be asserted through § 1985(3), a complainant could avoid most if not all of these detailed and specific provisions of the law. Section 1985(3) expressly authorizes compensatory damages; punitive damages might well follow. The plaintiff or defendant might demand a jury trial. The short and precise time limitations of Title VII would be grossly altered. Perhaps most importantly, the complainant could completely bypass the administrative process, which plays such a crucial role in the scheme established by Congress in Title VII.

*Id.* at 375–376, 99 S.Ct. at 2350–51.

At the plaintiffs' invitation, the Court has thoroughly reexamined their third count under sections 1985 and 1986, both as a separate claim for relief and within the context of the entire complaint. Despite its efforts to separate the discrete constitutional violations allegedly committed by defendant Switala and her co-conspirators from those charges that sound under Title VII, the Court remains convinced that these plaintiffs have attempted precisely what the Supreme Court has prohibited— namely, invoking section 1985(3) to redress violations that are, in truth, actionable under Title VII.

This is not to say, of course, that there may never be an action in which discrete claims of employment discrimination and some conspiratorial deprivation of equal protection of the laws might spring from the same set of operative facts—only that this is not such a case. Where, as here, the charged constitutional deprivation inheres in the very creation and implementation of an allegedly discriminatory plan, the Court must conclude that the claims are not sufficiently discrete to escape the *Novotny* proscription.

■ The plaintiffs' accurate statement of the law that section 1985(3) is to be interpreted liberally and applied broadly to redress the infringement of constitutional rights does not convince the Court that its reading of the complaint in this case is in error. Nor does the Court find persuasive their effort to distinguish *Novotny* on the basis that it "involved a purely private conspiracy involving no state action whatsoever," Plaintiffs' *Brief In Opposition To Motion To Limit Scope Of Action* at 7 (December 2, 1983). Instead, the Court finds that their cause of action under section 1985(3) depends so fundamentally on the alleged deprivation of rights created by Title VII that it must be dismissed.

## THE REMEDIAL SCHEME UNDER TITLE VII AND THE PLAINTIFFS' CLAIM FOR RELIEF UNDER § 1983

The wholly integrated nature of the plaintiffs' claims is not dispositive, how-

---

**2.** Section 1986 of title 42 of the United States Code provides, in pertinent part, as follows:

Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in the preceding section [42 USCS § 1985], are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action.... But no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued.

ever, of the defendants' motion to dismiss Count Two of the indictment, based on alleged violations of 42 U.S.C. § 1983.[3] As both parties have implicitly acknowledged, the signals from the United States Supreme Court on whether a section 1983 claim may be premised solely on Title VII are decidedly mixed. Yet having reviewed and carefully considered the facially discordant authority on the issue, the Court concludes that the plaintiffs' position must be rejected.

Beginning again with the reasoning in *Great American Savings & Loan Association v. Novotny*, 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979), this Court observes that the remedial framework of Title VII could be just as effectively circumvented by a litigant suing under section 1983 as it could by a party seeking relief under section 1985(3). The Supreme Court's expressed interest in ensuring that "[u]nimpaired effectiveness ... be given to the plan put together by Congress in Title VII," *Great American Federal Savings & Loan Association v. Novotny*, 442 U.S. 366, 378, 99 S.Ct. 2345, 2352, 60 L.Ed.2d 957 (1978), goes far in convincing this Court that, in a case such as this, a section 1983 claim, like that anchored under sections 1985 and 1986, should not proceed solely on the coattails of rights prescribed by Title VII.

The Court's conclusion in this regard finds considerable support in a case decided by the Supreme Court some three years before *Novotny*, *Brown v. General Services Administration*, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976). There, the plaintiff alleged that the employing agency had racially discriminated against him by not promoting him to a higher employment grade. Although he sought relief under section 717 of Title VII of the Civil Rights Act of 1964; the Declaratory Judgment Act, 28 U.S.C. §§ 2201 & 2202; and 42 U.S.C. § 1981, the Supreme Court upheld the dismissal of his entire action on the basis that it was not filed with the 30-day period prescribed by section 717(c). In so doing, it found that both the legislative history and statutory composition of that statute evinced a congressional intent that it be the exclusive, preemptive administrative and judicial scheme for redress of federal employment discrimination:

> The balance, completeness, and structural integrity of § 717 are inconsistent with the petitioner's contention that the judicial remedy afforded by § 717(c) was designed merely to supplement other putative judicial relief. His view fails, in our estimation, to accord due weight to the fact that unlike these other supposed remedies, § 717 does not contemplate merely judicial relief. Rather, it provides for a careful blend of administrative and judicial enforcement powers. Under the petitioner's theory, by perverse operation of a type of Gresham's law, § 717, with its rigorous administrative exhaustion requirements and time limitations, would be driven out of currency were immediate access to the courts under other, less demanding statutes permissible. The crucial administrative role that each agency together with the Civil Service Commission was given by Congress in the eradication of employment discrimination would be eliminated "by the simple expedient of putting a different label on [the] pleadings." *Preiser v. Rodriguez*, 411 U.S. 475, 489–490 [93 S.Ct. 1827, 1836, 36 L.Ed.2d 439] (1973). It would require the suspension of disbelief [sic] to ascribe to Congress the design to allow its careful and thor-

---

**3.** Section 1983 of Title 42 of the United States Code reads as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

ough remedial scheme to be circumvented by artful pleading.

*Brown v. General Services Administration*, 425 U.S. 820, 832–833, 96 S.Ct. 1961, 1967–68, 48 L.Ed.2d 402 (1976).

The Supreme Court's reference in *Brown* to its earlier decision in *Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), is significant, for in that case as well, the Court concluded that a precisely-drawn, detailed statute preempts more general remedies. In response to an action under both 42 U.S.C. § 1983 and the applicable habeas corpus statute, 28 U.S.C. § 2254, brought by state prisoners whose good-time credits had been cancelled for disciplinary reasons, the Court noted that the broad language of section 1983 was not conclusive of the issue:

The statute is a general one, and, despite the literal applicability of its terms, the question remains whether the specific federal habeas corpus statute, explicitly and historically designed to provide the means for a state prisoner to attack the validity of his confinement, must be understood to be the exclusive remedy available in a situation like this where it so clearly applies.... [A challenge under § 1983] is just as close to the core of habeas corpus as an attack on the prisoner's conviction, for it goes directly to the constitutionality of his physical confinement itself and seeks either immediate release from that confinement or the shortening of its duration.

In amending the habeas corpus laws in 1948, Congress clearly required exhaustion of adequate state remedies as a condition precedent to the invocation of federal judicial relief under those laws. It would wholly frustrate explicit congressional intent to hold that the respondents in the present case could evade this requirement by the simple expedient of putting a different label on their pleadings. In short, Congress has determined that habeas corpus is the appropriate remedy for state prisoners attacking the validity of the fact or length of their confinement, and that specific determination must override the general terms of § 1983.

*Preiser v. Rodriguez*, 411 U.S. 475, 489–490, 93 S.Ct. 1827, 1836, 36 L.Ed.2d 439 (1973).

■ Likewise, in *Middlesex County Sewerage Authority v. Sea Clammers*, 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1980), the Supreme Court concluded that the detailed schemes and particular remedies written into certain federal environmental laws preclude the simultaneous invocation of 42 U.S.C. § 1983:

When the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983. As Justice Stewart, who later joined the majority in *Maine v. Thiboutot*, [100 S.Ct. 2502, 65 L.Ed.2d 555] stated in *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 673, n. 2 [99 S.Ct. 1905, 1945, n. 2, 60 L.Ed.2d 508] (1979) (dissenting opinion), when "a state official is alleged to have violated a federal statute which provides its own comprehensive enforcement scheme, the requirements of that enforcement procedure may not be bypassed by bringing suit directly under § 1983." As discussed above, the [federal environmental laws at issue] do provide quite comprehensive enforcement mechanisms. It is hard to believe that Congress intended to preserve the § 1983 right of action when it created so many specific statutory remedies....

We therefore conclude that the existence of these express remedies demonstrates not only that Congress intended to foreclose implied private actions but also that it intended to supplant any remedy that otherwise would be available under § 1983.

*Middlesex County Sewerage Authority v. Sea Clammers*, 453 U.S. 1, 20–21, 101 S.Ct. 2615, 2626–27, 69 L.Ed.2d 435 (1980). The upshot of these decisions—and the central principle that animates today's ruling—is that a reasonably elaborate, structurally-integrated system for remedying wrongs in the public domain, such as that established

by Title VII of the Civil Rights Act of 1964, should provide the exclusive means of enforcement of those rights specifically set forth therein. In a case like the present, where the plaintiffs' so-called constitutional allegations are so tied up with their cause of action under Title VII that they are, in the Court's view, nearly unidentifiable as discrete claims, the principle articulated in *Novotny, Brown, Preiser,* and *Sea Clammers* is wisely followed.

Admittedly, the Supreme Court has provided the plaintiffs with some support for the proposition that Title VII need not preempt a companion action under 42 U.S.C. § 1983. In *Johnson v. Railway Express Agency,* 421 U.S. 454, 459, 95 S.Ct. 1716, 1719, 44 L.Ed.2d 295 (1974), for example, the Court held that the timely filing of an employment discrimination charge, pursuant to section 706 of Title VII, does not toll the running of the limitation period applicable to an action, based on the same facts, brought under 42 U.S.C. § 1981. In this context, the Court observed that "[d]espite Title VII's range and its design as a comprehensive solution for the problem of invidious discrimination in employment the aggrieved individual clearly is not deprived of other remedies he possesses and is not limited to Title VII in his search for relief."

Similarly, in *Alexander v. Gardner-Denver Company,* 415 U.S. 36, 48–49, 94 S.Ct. 1011, 1019–20, 39 L.Ed.2d 147 (1973), the Supreme Court concluded that "Title VII was designed to supplement, rather than supplant, existing laws and institutions relating to employment discrimination." *See also Nilsen v. City of Moss Point,* 701 F.2d 556, 561 (5th Cir.1983) (identifying a legislative intent to "construct separate procedural avenues for the vindication of an individual's substantive rights").

Although it opines that these cases are legitimately distinguishable from the circumstances of the present action both factually and with respect to the contexts from which the language quoted above is excerpted, the Court will decline any invitation to engage in either an exhaustive restatement of the legislative history or to parse those aspects of *Novotny, Brown, Preiser,* and *Sea Clammers* that convince it that the import of these cases is more compelling than that of *Johnson* and *Alexander.* It is sufficient to note that the Court's review of the legislative history, coupled with its consideration of the somewhat mixed messages coming from the Supreme Court, have convinced it that the invocation of section 1983 attempted here is neither warranted nor necessary to a complete vindication of the plaintiffs' position.

The Congress has wisely constructed a sophisticated mechanism for the redress of discriminatory practices in the employment setting; absent some discrete allegation of deprivations of rights and privileges secured them by the laws of the land, these plaintiffs should be confined to prosecuting what are, in the end, Title VII claims within the framework of Title VII.[4] Because the Court so interprets the plaintiffs' cause of action, it will preclude them from prosecuting their section 1983 count based on either an alleged violation of Title VII or a claimed infringement of their Fourteenth Amendment rights.

To the extent that today's decision is inconsistent with Judge Shabaz's ruling in *Huebschen v. Department of Health and Social Services,* 547 F.Supp. 1168 (W.D. Wis.1982), *reversed and remanded on other grounds,* 716 F.2d 1167 (7th Cir.1983), the decision of the Court of Appeals for the

---

**4.** In their responsive brief, the plaintiffs twice request that "if the Court does not view the[ir] ... claim[s] for relief as being based on both Title VII and the Fourteenth Amendment," a decision on the defendants' motion be withheld "pending the plaintiffs' filing of a Motion to Amend their Complaint to clarify the basis for their ... claim[s] for relief under [sections 1983, 1985(3), and 1986]." Plaintiffs' *Brief In Opposition To Motion To Limit Scope Of Action* at 8 & 22 (December 2, 1983). The Court will

decline to grant this request not only because of its untimely nature but also because it would likely necessitate a reargument of precisely those issues raised by the present motion. If the plaintiffs felt that their complaint did not provide the Court and the opposing parties with adequate notice of the nature of the charges they are making, they should have moved to amend prior to this advanced stage in the proceedings.

Ninth Circuit in *Bradshaw v. The Zoological Society of San Diego*, 569 F.2d 1066 (9th Cir.1978), and those tribunals whose cases are cited in support of the Fourteenth Amendment claim, this Court readily admits its disagreement with them and trusts that the court of appeals for this circuit and perhaps the Supreme Court itself will one day tell us all who is right.[5] Until that day arrives, this Court will abide by its belief that, in cases such as the present, the Congress intended that Title VII of the Civil Rights Act of 1964 provide the exclusive set of remedies for discrimination in employment.

## CONCLUSION

For the reasons articulated herein, the Court has **GRANTED** in its entirety the defendant's motion to limit the scope of this action, construed as a motion to dismiss Counts Two and Three of the complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

---

**5.** Despite the plaintiffs' interpolative reading of the Court of Appeals' decision in *Huebschen v. Department of Health & Social Services*, 716 F.2d 1167 (7th Cir.1983), this Court does not interpret that opinion as a tacit ratification of section 1983 actions based solely on violations of Title VII. The Court there specifically noted that it "need not reach this question." *Id.* at 1170.