**Peggy M.M. WIMBERG, Plaintiff,**

v.

**UNIVERSITY OF EVANSVILLE and Board of Trustees in its official capacity, Dee Kalena, individually and in her capacity as an employee of the University of Evansville, Vincent Angotti, individually and in his capacity as an employee of the University of Evansville, Defendants.**

No. EV 86–114–C.

United States District Court,
S.D. Indiana,
Evansville Division.

June 28, 1989.

Noffsinger, Deig & Behrens, Evansville, Ind., for plaintiff.

Thomas O. Magan, Kahn Dees Donovan & Kahn, Evansville, Ind., for defendants.

## MEMORANDUM

BROOKS, Chief Judge.

### I. INTRODUCTION TO CASE

Plaintiff, Peggy Wimberg, began working for defendant, University of Evansville, in 1970 as Secretary to the Dean of the College of Fine Arts. With the exception of a two year period, 1972–1974, plaintiff continued to be employed in that position until March, 1984. The plaintiff's absence from 1972 to 1974 is not relevant to this case.

In March, 1984 defendant, Dr. Vincent Angotti, who had been Dean of the College of Fine Arts since September, 1981 recommended that the plaintiff be removed from her position as his secretary. The reason stated by Dr. Angotti, and alleged to be true by all defendants, for plaintiff's removal from her position, was that plaintiff exhibited a bad attitude, was insubordinate and performed unsatisfactory work. Plaintiff was terminated and escorted off the campus of the University on or about March 12, 1984.

Plaintiff appealed her termination through established University procedures. As a result of this appeal the University decided to continue the plaintiff's employment, but to transfer her to the University Relations Office. Plaintiff began working in the University Relations Office in May, 1984 under the supervision of defendant, Dee Kalena, Director of the office.

In September, 1984 Dee Kalena recommended that the plaintiff not continue to be employed in the University Relations Office, as Dee Kalena was unsatisfied with the plaintiff's work.

Later that same month—September, 1984—the University Personnel Department transferred plaintiff to the Registrar's Office. Also unsatisfied with the plaintiff's performance, the University Registrar requested that the plaintiff be removed from the Registrar's Office.

As a result of this last unsuccessful attempt to place the plaintiff, the University terminated her employment for the second time, on January 7, 1984. Subsequently, plaintiff spoke to Dr. Graves, President of the University, presumably in an attempt to be reinstated. On February 2, 1985 plaintiff received notice from Dr. Graves stating that he would take no action to change the decision to terminate her.

The plaintiff filed her Complaint with the Human Relations Commission of February 20, 1985 and the plaintiff received a Right to Sue Letter from the EEOC dated February 27, 1986.

Subsequently, plaintiff filed her Complaint with this Court on May 28, 1986 captioned "Peggy M.M. Wimberg, plaintiff, vs. University of Evansville and Board of Trustees in its official capacity, defendants; Case No. EV 86–114–C." The Complaint contained two Counts, one a Title VII sex discrimination claim, seeking relief under 42 U.S.C. § 2000e, and the other an age discrimination claim, seeking relief under 29 U.S.C. § 630. The defendant answered on June 4, 1986 and plaintiff filed a Motion for Leave to File an Amended Complaint, pursuant to Fed.R.Civ.P. 15, on June 20, 1986. That Motion was granted and plaintiff filed her Amended Complaint on July 8, 1986. The Amended Complaint added Dee Kalena and Vince Angotti as defendants, as well as two new Counts. The defendants filed their Joint Answer to the plaintiff's Amended Complaint on July 21, 1986.

This case now comes before the Court upon the Motion of the defendants for Summary Judgment.

## II. SUMMARY JUDGMENT STANDARD

Fed.R.Civ.P. 56 governs summary judgment and subsection (c) states that "the judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Summary judgment is not intended to be a substitute for a trial on the disputed facts, rather it is intended to dispose of those cases which have no genuine issue of material fact to litigate. *Federal Savings and Loan Ins. Corp. v. Williams*, 599 F.Supp. 1184 (D.C.Md.1984). By granting a motion for summary judgment the court is concluding that, based upon the evidence which the court has available, no reasonable jury could return a verdict favoring the party against whom the summary judgment has been granted. *Munson v. Friske*, 754 F.2d 683 (7th Cir.1985).

Generally, the purpose of Rule 56 is to avoid unnecessary protracted litigation. Summary judgment allows the court to dispose of meritless claims before becoming entrenched in frivolous and costly trials. *Donahue v. Windsor Locks Bd. of Fire Com'rs*, 834 F.2d 54 (2nd Cir.1987). Although, if disposing of a summary judgment requires as much time as a full trial on the merits, Rule 56 no longer serves the purpose of economizing the court's and the litigants' time. *Elliott v. Elliott*, 49 F.R.D. 283 (D.C.N.Y.1970); 10A Wright, Miller & Kane, Federal Practice and Procedure, Summary Judgment Proceedings § 2728 at 557–58.

When reviewing a motion for summary judgment a court must give the benefit of all inferences to the party opposing a motion for summary judgment and to examine the record in a light favorable to that party. *Johnson v. Educational Testing Service*, 754 F.2d 20 (1st Cir.), *cert. den.* 472 U.S. 1029, 105 S.Ct. 3504, 87 L.Ed.2d 635 (1985).

A court is to act with caution when granting summary judgment and may deny the motion when reason exists to believe that the better course is to proceed to a full trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). This is not to say that a court should be reluctant to grant a motion for summary judgment when the record reflects that no genuine issue of material fact exists. The purpose of summary judgment procedure is to eliminate trial in cases where trial is unnecessary and results in

delay and expense, and, with ever-increasing burden upon judiciary, persuasive reasons exist for utilization of summary judgment procedures whenever possible; courts therefore will not strain to find existence of genuine issue where none exists. *Ford Motor Credit Co. v. Devalk Lincoln–Mercury, Inc.,* 600 F.Supp. 1547 (D.C.Ill.1985). The Supreme Court stated in *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) that:

> Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action ... Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the rule, prior to trial, that the claims and defenses have no factual basis. *Id.* at 326–27, 106 S.Ct. at 2555.

Using this standard the Court will now address the defendants' Motion for Summary Judgment.

## III. SEX DISCRIMINATION CLAIM

The defendants allege[1] that plaintiff's first Count, the sex discrimination charge brought under 42 U.S.C. § 2000e, is barred by the applicable administrative filing requirement.[2] Plaintiff claims that a "continuing violation" occurred, and as such, that she timely raised her Title VII claim.

42 U.S.C. § 2000e–5 requires that complainants file their 2000e charges with the EEOC within three hundred (300) days of the alleged violation.

The plaintiff herein filed her Complaint with the Human Relations Commission on February 20, 1985. That agency issued a Right to Sue Letter to the plaintiff on February 27, 1986. Subsequently, plaintiff filed her Complaint with this Court on May 28, 1986 captioned "Peggy M.M. Wimberg, plaintiff, vs. University of Evansville and Board of Trustees in its official capacity, defendants; Case No. EV 86–114–C." The Complaint had two Counts, the first being a 42 U.S.C. § 2000e sex discrimination claim and the second alleging age discrimination, seeking relief under 29 U.S.C. § 630. The defendants answered on June 4, 1986 and plaintiff filed a Motion for Leave to File an Amended Complaint, pursuant to Fed.R.Civ.P. 15, on June 20, 1986. The Motion was granted on July 8, 1986 and plaintiff filed her Amended Complaint on the same day. The Amended Complaint added Dee Kalena and Vince Angotti as defendants, as well as two new Counts. These new Counts made claims only against the two defendants added by the Amended Complaint. No new claim, or amendment to the original claims, was made against the University in the Amended Complaint. The defendants filed their Answer to the plaintiff's Amended Complaint on July 21, 1986.

The plaintiff does not dispute the defendants' allegations that Count I, the § 2000e claim, must be filed within three hundred (300) days of the alleged unlawful employment practice and that three hundred forty-five (345) days elapsed between the date that the plaintiff was terminated and "escorted off campus," March 12, 1984, and the date she filed her EEOC charge, February 20, 1985. However, plaintiff does contend that the defendants were engaged in a continuing violation, and as such, that her claim with the EEOC was timely since she was not terminated for the final time until January 7, 1985.

Continuing violation is a judicially created exception to the statutory time limitations set forth in 42 U.S.C. § 2000e. As

---

**1.** Defendants have alleged in both their Answer to Amended Complaint and Motion for Summary Judgment that plaintiff failed to timely file her EEOC charge as to her sex and age discrimination charges.

**2.** Defendants also allege that plaintiff has failed to prove a prima facie case of sex discrimination. This issue is not addressed in this opinion due to the Court's decision that the plaintiff has not complied with the applicable limitation requirement.

stated, the applicable time prerequisite herein provided that the plaintiff must file her EEOC charge within three hundred (300) days of the alleged violation [42 U.S.C. § 2000e–5(e)]. Defendants assert that the plaintiff is relying on the incident of March 12, 1984 to establish her sex discrimination claim and plaintiff alleges that the defendants' acts were numerous and constitute a continuing violation, which began on March 12, 1984.

In *Delaware State College v. Ricks,* 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980) the Supreme Court, citing *Abramson v. University of Hawaii,* 594 F.2d 202, 209 (9th Cir.1979), stated that when determining the date of the discriminatory practice a court's "proper focus is upon the time of the discriminatory act, not upon the time at which the consequences of the acts became most painful." The Court reiterated this point in *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977) when it stated "it is simply insufficient for [complainant] to allege that his termination gives present effect to the past illegal act and therefore perpetuates the consequences of forbidden discrimination." In short, a violation must be present, that is, the discriminatory acts must fall within the three hundred (300) day period preceding the date the plaintiff filed her charge with the EEOC.

In *Stewart v. CPC Intern, Inc.,* 679 F.2d 117 (7th Cir.1982) the Court set out three situations where a continuing violation could be found.

The first situation involves a determination of whether the employee knew or should have known that he or she was discriminated against. The date the employee knew or should have known that he or she was discriminated against is the date that begins the clock running concerning the time requirement to file an EEOC charge. The Court in *Stewart* stated that "this rule is applied in cases, usually involving hiring or promotion practices, when the employer's decision-making process takes place over a period of time, making it diffi-

cult to pinpoint the exact day the violation occurred." *Id.* at 120.

The plaintiff herein has not alleged that she was denied promotions or otherwise discriminated against due to a long term decision-making process. On the contrary, the plaintiff is contending otherwise in her response to the Motion for Summary Judgment. Also, in her deposition the plaintiff went so far as to state that her termination, and resulting escort from campus on March 12, 1984, was the only basis for her sex discrimination claim. Plaintiff now contends that the termination of March 12, 1984 was the beginning of several subtle discriminatory acts, one of which falls within the three hundred (300) days preceding her EEOC charge. This Court does not agree. The facts herein evidence that the plaintiff knew, or at least should have known, that the discriminatory acts, if any, began March 12, 1984.

The second situation involves an employer's express, openly espoused policy which is alleged to be discriminatory. *Id.* at 121. This doesn't apply herein, as the plaintiff has not alleged that the defendant operated under such a policy, nor do any facts exist to warrant such a finding.

The final situation described in *Stewart* requires a finding that the employer has, for a period of time, followed a practice of discrimination, but has done so covertly. The Court stated in *Stewart,* at p. 121, that "in such cases the challenged practice is evidenced only by a series of discrete, allegedly discriminatory acts." The acts must be so covert or subtle that the plaintiff was not aware that he or she was being discriminated against until some time after the discriminatory acts had begun. Again, the plaintiff's allegations herein are that defendant, University of Evansville, first terminated her, then reinstated her to a lower position, transferred her and then terminated her again. These are not subtle acts. Further, the plaintiff's own testimony and argument easily establish that the first alleged discriminatory act was the most offensive to the plaintiff of all those

**592**

acts alleged by plaintiff to be discriminatory.[3]

The question of whether acts are continuous and connected, or individual, was examined in *Berry v. L.S.U.*, 715 F.2d 971, 981 (5th Cir.1983), where the following standard was set out.

> This inquiry, of necessity, turns on the facts and context of each particular case. Relevant to the determination are the following three factors, which we discuss, but by no means consider exhaustive. The first is subject matter. Do the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation? The second is frequency. Are the alleged acts recurring (*e.g.* a biweekly paycheck) or more in the nature of an isolated work assignment or employment decision? The third factor, perhaps of most importance, is degree of permanence. Does the act have the degree of permanence which should trigger an employee's awareness of and duty to assert his or her rights, or which should indicate to the employee that the continued existence of the adverse consequences of the act is to be expected without being dependent on a continuing intent to discriminate?

The U.S. District Court for the Northern District of Illinois applied these factors in *Zewde v. Elgin Community College*, 601 F.Supp. 1237 (N.D.Ill.1984). In that case the court found that the alleged discriminatory acts were related, but noted that the plaintiff was hurt by that fact as much as helped since the similarity of the acts increased the likelihood that the plaintiff

should have known he was being discriminated against. What this Court must determine is the date that the plaintiff knew or should have known she was being discriminated against. The Court in *Zewde* presented the question as "what event, in fairness and logic, should have alerted the average lay person to act to protect his rights, or when ... should he have perceived that discrimination was occurring?" *Id.* at 1242, citing *Elliott v. Sperry Rand Corp.*, 79 F.R.D. 580, 585 (D.Minn.1978).

In *London v. Coopers & Lybrand*, 644 F.2d 811, 814 (9th Cir.1981) it was stated that "absent special circumstances, a single act by an employer adverse to an employee's interest, such as discharge, layoff, or failure to transfer or promote, begins the running of the statute of limitations."

In the case at bar the plaintiff was faced with independent, discrete acts, the first of which occurred March 12, 1984. The plaintiff should have known at that time whether or not she was being discriminated against by the defendant, University of Evansville. Since the March 12, 1984 incident upon which plaintiff relies to prove her sex discrimination case falls outside the three hundred (300) days before she filed her EEOC charge, her Title VII claim is barred, and the defendants' Motion for Summary Judgment on plaintiff's sex discrimination charge is granted.

## IV. PLAINTIFF'S AGE DISCRIMINATION CLAIM

The plaintiff's Second Count alleges that she was discriminated against due to her age. The plaintiff is seeking relief under

---

**3.** The plaintiff testified during her deposition to the following concerning the incident of March 12, 1984:

"Q. Okay. You say you were discriminated against because of your sex. How do you feel you were treated differently because of your sex?
A. I was terminated by Dean Angotti. I was walked off the campus by Mr. Bordfeld. Those are two men doing this. Is that what you want me to say?
Q. Is that what you're relying on as saying you were treated differently because of your sex?
A. That's what happened.

Q. Do you have any other facts which would suggest that you were treated differently because of your sex?
A. Well, I don't know. Do you think they would have done it to a man?
Q. I'm asking you. Do you have any reason to believe? Any facts that would tell you that you were treated differently?
A. I don't know what you mean. I've answered you. I don't know what you mean.
Q. So, the only facts you have is that Dean Angotti terminated you and that Greg Bordfeld escorted you off the property. And that's your basis for how you feel you were treated differently because of your sex?
A. Yes."

29 U.S.C. § 621 et seq., the Age Discrimination in Employment Act (ADEA).

Again, the defendants argue that plaintiff is time barred. The plaintiff has responded by again asserting that the statute of limitation should be extended due to the defendants' continuing violation, and in addition, argues that the statute should be tolled as discussed in *Zipes v. T.W.A.*, 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982); see also *Stearns v. Consolidated Management, Inc.*, 747 F.2d 1105 (7th Cir. 1984). The plaintiff has not controverted the defendants' allegation that the plaintiff must have filed her age discrimination claim with the EEOC within one hundred eighty (180) days of the alleged discriminatory act and that more than one hundred eighty (180) days passed between the date she was first terminated and the day she filed her EEOC charge.

Plaintiff relies on the same set of facts to prove that her age discrimination claim was continuous as she did to prove her sex discrimination claim was continuous, except that she stresses that she was replaced as the secretary of the College of Fine Arts by a younger woman.[4] This Court must determine when a reasonable individual should have known that he or she needed to take action to protect his or her rights. It is the decision of this Court that whether the plaintiff was being discriminated against on account of her age should have become known to the plaintiff on the date she was replaced in the College of Fine Arts by the younger woman. Whether plaintiff should have known this at the date of her removal from the College of Fine Arts need not be determined. Plaintiff's employment with the College of Fine Arts terminated in March, 1984 and she was replaced on or about April 5, 1984. More than one hundred eighty (180) days elapsed between the date the plaintiff was replaced and the date the plaintiff filed her EEOC charge, hence her age claim is time barred. See *Blumberg v. HCA Manage-*

*ment Company, Inc.*, 848 F.2d 642 (5th Cir.1988) and *Caldwell v. National Ass'n of Home Builders*, 771 F.2d 1051 (7th Cir. 1985).

In regards to the plaintiff's argument that equitable tolling, waiver or estoppel should apply, the plaintiff presents no evidence to support this position and the Court finds no such evidence to exist. Hence, the defendants' Motion for Summary Judgment as to the ADEA claim is sustained, as the plaintiff did not timely file her EEOC claim.

## V. PLAINTIFF'S PENDENT CLAIMS

Plaintiff filed her original Two Count Complaint on May 28, 1986, naming the University of Evansville as the sole defendant. Subsequently, on July 8, 1986 plaintiff amended her Complaint and added defendants Kalena and Angotti. The plaintiff also added two additional Counts. The original Two Counts were sex and age discrimination, as discussed above. The two new Counts made claim that the new defendants defamed the plaintiff and tortiously interfered with her employment contract.

The plaintiff relied on the doctrine of pendent jurisdiction to give this Court the authority to hear her state law claims. Generally, federal courts are vested with the authority to hear state law claims if those claims accompany at least one related federal claim and both the state and federal claims "derive from a common nucleus of operative fact." *Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1965). The *Gibbs* court also stated in dictum that federal courts should not retain jurisdiction over state law claims where the federal claims have been dismissed. Despite, this is not the rule which is always applied. The Seventh Circuit Court of Appeals stated that:

Nonetheless, the Supreme Court's dictum that "certainly, if the federal claims are

---

4. In her deposition the plaintiff testified to the following:

"Q. You say you weren't treated equally because of your age. In what way weren't you treated equally?

A. I was replaced in the College of Fine Arts by a woman who was about 20–25 years younger than me.

Q. Anything else?

A. No."

dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well," has been ignored or limited on many occasions, even by the Court itself.... *United States v. Zima*, 766 F.2d 1153, 1159 (1985), citing *Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139.

Most decisions now hold that the determination on whether pendent claims should be dismissed after all federal claims are dismissed falls within the district court's discretion. Failure to exercise this discretion is error and can result in a remand to the trial court for a specific finding of whether dismissal is proper or not.

The Seventh Circuit has provided factors to assist in the determination of whether the trial court should hear a pendent claim after the federal claim has been dismissed in *Zepik v. Tidewater Midwest, Inc.*, 856 F.2d 936 (1988). These factors are judicial economy; fairness (particularly the prejudicial passage of state limitations periods); convenience to the parties; and the novelty or difficulty of the state law issues. The Court also held that "rejection or dismissal of the federal claim before trial, whether by 12(b)(6) motion, summary judgment or any other means, creates a strong presumption that the state claims should be dismissed." *Id.* at 945.

The case sub judice has no remaining federal issues. The two remaining claims are defamation and tortious interference with plaintiff's employment contract. This latter claim will require an examination into, and interpretation of, a changing and complex state law issue. It is more efficient and proper to have a state court adjudicate such an issue.

This Court further notes that it has also examined the potential prejudice a plaintiff can experience whenever a federal court dismisses a state claim for the reason discussed herein. Some courts have held that if a plaintiff would be barred from bringing a state court action because the statute of limitation expired after the plaintiff filed his or her federal claim that the federal court should retain jurisdiction to hear the state claim. This is not the case herein.

The applicable statute of limitation, I.C. 34–1–2–2, appears to have run prior to the date the plaintiff filed her action with this Court. The question of whether the plaintiff is entitled to "relation back" or tolling of the statute is better left to a state court. As such, plaintiff's pendent claims are hereby DISMISSED.

IT IS SO ORDERED.